UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN MARK RAINES, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 04-1835 (RMU) |
| | : | |
| v. | : | |
| | : | Document No.: 4 |
| U.S. DEPARTMENT OF JUSTICE, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

G<small>RANTING THE</small> D<small>EFENDANT'S</small> M<small>OTION TO</small> D<small>ISMISS</small>

**I.   INTRODUCTION**

The plaintiff, John Mark Raines, brings this case pursuant to the Rehabilitation Act ("RHA") of 1973, 29 U.S.C. § 701, the Tennessee Handicap Discrimination Act ("THDA"), T<small>ENN</small>. C<small>ODE</small> A<small>NN</small>. § 8-50-103 (2006), and the American with Disabilities Act ("ADA") , 42 U.S.C. §§ 12101, *et seq*., (1999) seeking redress for injuries arising from alleged discriminatory treatment. The matter is currently before the court on the defendant's motion to dismiss for summary judgment. Because the Rehabilitation Act is the exclusive remedy for federal employees, the court grants the defendant's motion to dismiss the plaintiff's THDA and ADA claims. Because the plaintiff failed to exhaust his administrative remedies, the court grants the defendant's motion to dismiss the plaintiff's RHA claim.

## II.   BACKGROUND

### A.   Factual History[1]

The plaintiff, a former FBI special agent, alleges that he developed chronic fatigue syndrome due to "the dry and dusty climate of Amarillo, Texas" shortly after beginning service at the FBI Dallas Field Office. Compl. ¶ 10. After experiencing health problems for several years, the plaintiff requested and received a hardship transfer for medical reasons from Amarillo, Texas to the Washington, D.C. Field Office. *Id*. ¶ 11. The defendant asserts that the plaintiff's last day of work in Texas was September 18, 1996, and the plaintiff never reported to work in Washington, D.C. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 8.

In October 1996, the plaintiff requested, and received, permission to take medical leave from duty. Def.'s Mot., Ex. 1 ("Pl.'s EEO Aff."). In connection with this leave, the FBI advanced him 240 hours of sick leave. *Id*. When this paid time expired, the plaintiff took leave without pay. *Id*. In April 1998, the plaintiff underwent a fitness-for-duty examination to determine his fitness as a special agent. Def.'s Mot., Ex. 7. As a result, the plaintiff was diagnosed with undifferentiated somatoform disorder, generalized anxiety disorder, and dependant, obsessive-compulsive, avoidant and schizoid personality traits. *Id.* The FBI, consequently, declared the plaintiff "not fit" to return to duty. *Id.* For these reasons, the plaintiff, on July 7, 1998, signed and executed an agreement to remain on "non-duty" status requiring, *inter alia*, the submission of monthly medical/progress reports from treating physicians. *Id.*

---

[1] The plaintiff's opposition to the defendant's motion to dismiss consists of six pages of conclusory arguments and no exhibits, and it does not contest the defendant's description of the factual background. As a result, the court references exhibits from the defendant's motion to dismiss to relay the factual circumstances of this case.

The plaintiff, however, failed to provide any status reports. Def.'s Mot., Exs. 8, 9. In July 1999, after unsuccessful requests for the reports, the FBI Personnel Office recommended the plaintiff's termination. Def.'s Mot., Ex. 9. Even though the plaintiff's physicians eventually submitted status reports in September 1999, noting the plaintiff's recent diagnosis of panhypopituitarism, "an organic brain disease," the FBI officially terminated him on October 15, 1999. Def.'s Mot., Ex. 11. The FBI cited the plaintiff's medical condition rendering him not fit for duty and his noncompliance with the agreed terms of "non-duty" status as reasons for termination. *Id*. The plaintiff asked the FBI to reconsider its decision. Def.'s Mot., Ex. 12 (the plaintiff's letter to the defendant dated Jan. 5, 2000). The agency declined, but indicated that the plaintiff could apply for reinstatement within one year after termination if his physicians deemed him able to work. Def.'s Mot., Exs. 12, 13.

Additionally, the FBI sent the plaintiff a payroll deficiency notice. Pl.'s EEO Aff., Def.'s Mot. Ex. 14. According to the defendant, the plaintiff owed the government $10,110.04 for advanced sick leave and health insurance premiums he wrongfully received while on non-duty status. Def.'s Mot., Ex. 14. The deficiency notification letter referenced the balance of the plaintiff's Federal Employees Retirement Fund ("FERS") Account and informed him of the option to use those funds to satisfy the deficiency. Def.'s Mot., Exs. 14, 15. The plaintiff chose to do so. Def.'s Mot., Ex. 15.

On August 13, 2000, the plaintiff requested reinstatement as special agent, referencing medical documentation clearing him for duty. Def.'s Mot., Ex. 16 (the plaintiff's letter to defendant requesting reinstatement). In response to the reinstatement request, the FBI Personnel Office conducted a series of interviews with the plaintiff's former supervisor and coworkers in

the Dallas Field Office.  Def.'s Mot., Ex. 17.  No one supported the plaintiff's reinstatement, emphasizing his inferiority as a special agent.  Def.'s Mot., Exs. 25, 27.  The FBI Personnel Office, however, halted review and immediately denied the plaintiff's reinstatement request upon discovering the plaintiff's FERS Account withdrawal, which rendered him ineligible for reinstatement.  Compl ¶ 12; Def.'s Mot., Ex. 26.

    The defendant notified the plaintiff of the denial of his request for reinstatement on December 27, 2001.  Pl.'s EEO Aff., Def.'s Mot., Ex. 28.  According to the notification letter, the FBI was unable to offer the plaintiff reinstatement due to "depletion of [the] FERS retirement account and comments obtained during the preliminary background investigation."  *Id*.  According to the defendant, the FERS Account withdrawal had forfeited any "retirement rights" based on the plaintiff's previous service; thus, his prior 9 years and 8 months of service could not be counted for reinstatement eligibility purposes.  *Id*.  Pursuant to FBI special agent reinstatement policies, only persons capable of completing 20 years of service by age 57 are eligible for reinstatement.  Def.'s Mot., Ex. 37.  For this reason, the defendant deemed the plaintiff, 46 years old, ineligible for reinstatement.  Def.'s Mot., Ex. 28.

    On January 17, 2002, the plaintiff contacted an FBI Equal Employment Opportunity ("EEO") counselor and subsequently filed a formal charge only alleging disability discrimination for the denial of his request for reinstatement.  Def.'s Mot., Exs. 29 (Report of Counseling), 30 (Administrative Complaint of Discrimination).  On June 16, 2004, the Equal Employment Opportunity Commission ("EEOC") entered summary judgment in favor of the defendant, finding 1) no evidence establishing that the plaintiff is a "qualified individual with a disability,"

and 2) no evidence that the plaintiff was regarded as disabled by officials involved in the denial of his reinstatement. Def.'s Mot., Ex. 35.

B. **Procedural History**

On March 5, 2004, the plaintiff filed suit against the defendant in the Middle District of Tennessee for discriminatory termination. On October 22, 2004, that court granted the defendant's motion to transfer the case to this district based on improper venue. On April 25, 2005, the defendant filed a motion to dismiss or for summary judgment on the grounds that the government is immune from suit under the THDA and that the plaintiff otherwise failed to exhaust his administrative remedies. The court now turns to the defendant's motion.

III. **ANALYSIS**

A. **Legal Standard for Motion to Dismiss**[2]

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

---

[2] The defendant brings its motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). The D.C. Circuit has noted that courts should consider Rule 12(b)(1) jurisdictional challenges before Rule 12(b)(6) challenges. *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)).

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

B.   **The Court Grants the Defendant's Motion to Dismiss the Plaintiff's Claims under the Tennessee Handicap Discrimination Act and the Americans with Disabilities Act.**

The plaintiff asserts his claim of disability discrimination against the United States Government under the THDA.  This state law claim is brought in addition to the plaintiff's federal claim under the RHA.  The RHA, however, provides the "exclusive remed[y]" for employment discrimination based on a disability for federal employees.  *Ward v. Kennard*, 133 F. Supp. 2d. 54, 57 (D.D.C. 2000); *Rattner v. Bennet*, 701 F. Supp. 7, 9 (D.D.C. 1988).  Because the plaintiff's only remedy is available through the RHA, the court dismisses his THDA claim.  *See Plautz v. Potter*, 2005 U.S. App. LEXIS 28501, at *8 (6th Cir. Dec. 12, 2005) (noting with approval the district court's dismissal of the plaintiff's discrimination claim under the Tennessee Human Rights Act because his claim under RHA provides the exclusive remedy for discrimination claims brought against federal employers).

Similarly, the plaintiff brings a wrongful termination claim under the ADA.  The plaintiff, however, cannot seek relief under the ADA because the statute is not applicable to federal employees.  *See* 42 U.S.C. § 12111 (5)(B)(I) (defining "employer," which determines coverage, to exclude "the United States"), *see also Thrash v. Library of Congress*, 2006 U.S. Dist. LEXIS 9988 (Feb. 24, 2006) (citing *Lester v. Natsios*, 290 F. Supp. 2d 11, 23 n.2 (D.D.C. 2003) (construing the plaintiff's ADA claims as RHA claims, stating that "the Rehabilitation Act expressly incorporates the standards of the ADA for claims of employment discrimination")).  Therefore, the court dismisses the plaintiff's ADA claim because that statute is not applicable to federal employees.  Consequently, the court will only consider his wrongful termination claim as brought under the RHA.

### C. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's RHA Claim for Failure to Exhaust Administrative Remedies.

The defendant argues that the plaintiff failed to exhaust the administrative remedies available to him by not contacting an EEO counselor within 45 days of the alleged discriminatory termination. Def.'s Mot., at 12. The plaintiff, conversely, asserts that he properly exhausted administrative remedies because he timely contacted an EEO counselor after the FBI denied his request for reinstatement as a special agent. Pl.'s Opp'n at 4-5. The plaintiff bases his argument on the contention that the alleged discriminatory actions – termination and denial of reinstatement as a special agent – are merely aspects of the plaintiff's discriminatory termination claim, two "bullets" which "strike precisely the same blow," rather than separate and discrete acts. *Id*. at 5. The plaintiff, therefore, believes that he fully exhausted his administrative remedies by contacting an EEO counselor within 45 days of the denial of his reinstatement. He also points to the EEO for failing to investigate the termination as a discrete injury based on his administrative charge of discriminatory denial of reinstatement. *Id*. at 4.

For the reasons that follow, the plaintiff brings a claim of discriminatory termination, and yet he failed to exhaust his administrative remedies for that claim. As a result, rather than "striking precisely the same blow," both of the plaintiff's "bullets" miss their mark, and the plaintiff thus loses this legal quick-draw.

#### 1. Legal Standard for Exhaustion of Administrative Remedies

Although the ADA is inapplicable to federal employees, regulations promulgated by the Department of Labor require federal courts to use ADA standards when determining whether Section 501 of the Rehabilitation Act has been violated. 29 C.F.R. § 1614.203. Section 501 is

the exclusive remedy for federal employees alleging disability discrimination by a federal agency. *See Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003).  In actions brought under Title VII and the ADA, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Servicemaster Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997).  It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies.  *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that untimely exhaustion of administrative remedies is an affirmative defense, and the defendant bears the burden of pleading and proving).  Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden.  *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies.  *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

**2.    The Plaintiff Failed to Contact an EEO Counselor within 45-Days of His Termination**

As stated, before the court is the plaintiff's lone claim of discriminatory termination.[3] Compl. ¶ 13 (stating that he was "terminated because the [FBI] refused to accommodate [his] disability"). The plaintiff contends that he did "everything that could have been done" to exhaust the available administrative remedies for his wrongful termination claim, Pl.'s Opp'n at 5, and dramatically asserts that "[n]othing John Mark Raines did or did not do had the slightest effect on how either the FBI or the EEOC chose to proceed, nor could it have had any effect." *Id*. at 4. The court disagrees.

The plaintiff is required to exhaust the available administrative remedies prior to bringing this suit in federal court. *Park*, 71 F.3d at 907; *Aceto v. England*, 328 F. Supp. 2d 1, 5 (D.D.C. 2004). Fundamental to exhaustion, a plaintiff must contact an EEO counselor within 45 days of an alleged discriminatory act, in this case, within 45 days of the plaintiff's termination. *Aceto*, 328 F. Supp. 2d at 5; 29 C.F.R. § 1614.105(a)(1). The plaintiff asserts that his timely filed charge of discriminatory denial of reinstatement included his discriminatory termination claim. Pl.'s Opp'n at 5. Maintaining that the two allegations of discrimination are one and the same, the plaintiff claims to have properly exhausted his administrative remedies because he contacted an EEO counselor within 45 days of the alleged discriminatory denial of reinstatement. *See id*.

---

[3]    While the plaintiff may have intended to assert a claim of discrimination in the denial of reinstatement before this court, "it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel," like the plaintiff here. *Sanches v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) (citations omitted). It is the plaintiff's task "to spell out [his] arguments squarely and distinctly." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (citations and quotations omitted). Therefore, because the plaintiff did not bring a claim of wrongful failure to reinstate, the court will only consider his discriminatory termination claim.

Central to his argument, the plaintiff challenges "the heart and soul of the government's position [which] requires the court to make a distinction between 'termination' and 'denial of [a] request for reinstatement.'" *Id.*  Contrary to his assertion, however, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," are independent and thus "separable, actionable 'unlawful employment practices.'" *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).  For this reason, the plaintiff's two alleged events of discrimination – improper termination and denial of reinstatement – are the type of incidents identified in *Morgan* as separate, discrete acts.  Moreover, "each discriminatory act starts a new clock for filing charges alleging that act." *Id*.  Thus, the plaintiff was required to contact an EEO counsel within 45 days of his termination in order to exhaust administrative remedies for that independent claim before bringing this suit.  *Powell v. Castaneda*, 390 F. Supp. 2d 1, 9 (D.D.C. 2005) (dismissing the plaintiff's claims of multiple discrete acts occurring more than 45 days prior to her contacting an EEO counselor).

According to the record, the plaintiff's official termination date was October 15, 1999. Def.'s Mot., Ex. 11.  The plaintiff contends that he received notice of termination on December 16, 1999.  Def.'s Mot., Ex. 12.  Nevertheless, the plaintiff only contacted an EEO counselor in January 2002, almost three years after his termination.  Def.'s Mot., Ex. 29.  Therefore, even accepting the later termination date as the correct one, the plaintiff overshot the 45-day window by more than 800 days.  Consequently, the plaintiff failed to exhaust the administrative remedies for his termination claim before filing suit.  *Broderick v. Donaldson*, 437 F.3d 1226 (D.C. Cir. 2006); *Powell*, 390 F. Supp. 2d at 9; *Harris v. Attorney Gen. of the United States*, 400 F. Supp. 2d 24, 28 (D.D.C. 2005) (dismissing the plaintiff's discrimination claim for failure to timely

exhaust administrative remedies because the plaintiff did not contact an EEO counselor within 45 days of the alleged discriminatory termination).  In other words, the plaintiff's timely contact with an EEO counselor after the alleged discriminatory denial of reinstatement cannot rescue his termination claim.

Because the plaintiff did not contact an EEO counselor within the 45 days of the alleged wrongful termination from the FBI, he failed to exhaust the available administrative remedies. *Harris*, 400 F. Supp. 2d at 27; *Aceto*, 328 F. Supp. 2d at 7.  Accordingly, the court dismisses the plaintiff's wrongful termination claim.[4]  *Harris*, 400 F. Supp. 2d at 29; *Powell*, 390 F. Supp. 2d at 9; *Aceto*, 328 F. Supp. 2d at 7.

---

[4] The plaintiff does not raise any argument that he was unaware or failed to receive notice of the 45-day period, and thus he should not be subject to the time limit.  The court, therefore, will not consider the doctrine of equitable tolling in this case.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (stating that it is the plaintiff's heavy burden to plead and prove facts sufficient to support equitable tolling); *Saltz v. Leham*, 672 F.2d 207, 209 (D.C. Cir 1982) (affirming district court's denial of equitable tolling because the plaintiff did not plead or prove any equitable circumstances for his failure to contact an EEO counselor within the requisite time period).

## IV.     CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the plaintiff's THDA claim.  Additionally, the court concludes that the plaintiff failed to exhaust his administrative remedies, and it grants the defendant's motion to dismiss the plaintiff's RHA claim.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of March 2006.

RICARDO M. URBINA
United States District Judge